UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAUL GOINS, ) | CASE NO. 1:10CV924 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE BENITA PEARSON |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | **REPORT & RECOMMENDATION** |
| SOCIAL SECURITY, ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Defendant. ) | |

Paul Goins ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court REVERSE the Commissioner's decision and REMAND this case for redetermination and explanation of the ALJ's pain analysis and credibility determination:

I.      **PROCEDURAL AND FACTUAL HISTORY**

On October 26, 2005, Plaintiff filed an application for DIB, alleging disability beginning December 25, 2003 due to a lower back injury, neck pain, post-traumatic stress disorder ("PTSD"), attention deficit disorder ("ADD"), dyslexia, and depression. Tr. at 34-36, 40, 66-72, 93. The SSA denied Plaintiff's application initially and on reconsideration. *Id.* at 34-36, 40-41.

Plaintiff filed a request for an administrative hearing and on August 13, 2008, an Administrative Law Judge ("ALJ") conducted an administrative hearing by video where Plaintiff was represented by counsel. Tr. at 570. At the hearing, the ALJ heard testimony from: Plaintiff; Medical Expert Dr. McKenna ("ME McKenna"), a board certified internist and bone mineral disease specialist; Medical Expert Dr. Kravitz, a psychologist ("ME Kravitz"); and Mr. Gustoff, a vocational expert ("VE"). Tr. at 59-64, 570, 583. On November 10, 2008, the ALJ issued a Notice of Decision - Unfavorable. Tr. at 23-31. Plaintiff filed a request for review, and included medical evidence in

the form of records from January 18, 2006 through September 15, 2008 from the Comprehensive Pain Care Center, Inc. *Id*. at 9. The Appeals Council indicated that it had set aside its earlier action denying Plaintiff's request for review in order to consider the additional information that Plaintiff had provided in the form of medical records. *Id.* at 5. However, the Appeals Council considered the additional evidence and denied the request for review, explaining that the submitted medical evidence did not affect the ALJ's decision because it concerned a period of time later than the ALJ's decision. *Id.* at 6.

On April 27, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On August 25, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #13. On October 25, 2010, Defendant filed his brief on the merits. ECF Dkt. #16.

On October 26, 2010, Plaintiff filed a motion to supplement his brief with additional medical records, a subsequent favorable ALJ decision dated April 29, 2010, and a consultative examination report dated October 15, 2009. ECF Dkt. #17. Defendant filed a brief in opposition to the motion to supplement. ECF Dkt. #18. On November 30, 2010, Judge Pearson denied Plaintiff's motion to remand or supplement the record with evidence derived after the disability period had ended. ECF Dkt. #19.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

On November 10, 2008, the ALJ determined that Plaintiff suffered from back pain with a Schmorl's nodule in the back region, degenerative joint disease in the back, status post neck fusion at C5-6, status post right knee surgery, myofascial pain, depression and alcohol abuse, all of which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). Tr. at 25. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with: occasional bending, twisting, stooping, and turning; short, simple instructions; incidental contact with the public; superficial contact with supervisors and co-workers; and without high levels of production, unpredictable levels of stress, and no frequent changes in job duties. Tr. at 26.

Based upon the VE's testimony and the RFC that he had determined, the ALJ found that Plaintiff could not perform his past relevant work as a warehouse worker, but he could perform jobs existing in significant numbers in the national economy, such as an laundry worker, stocker clerk or can conveyer feeder. Tr. at 29-30. The ALJ therefore determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to DIB. *Id.* at 30.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS

### A.     REQUEST FOR REMAND-NEW AND MATERIAL EVIDENCE

Plaintiff first asserts that he has new and material evidence of his depression that warrants a remand of his case. ECF Dkt. #13 at 12. Plaintiff contends that treatment records from the Nord Center from 2008 through 2009 and an agency consultative examination performed by Dr. Koricke on October 15, 2009 "clearly relate to Mr. Goins' conditions at the time of the first hearing." *Id*. Plaintiff posits that these records are new and material because they were generated after the first hearing, resulted in a subsequent favorable ALJ decision on a new application for social security benefits, and show the true severity and duration of his mental condition. *Id*. at 11.

Defendant asserts that the additional evidence submitted by Plaintiff is not subject to this Court's substantial evidence review because it was not part of the administrative record and not before the ALJ. ECF Dkt. #16 at 9. Defendant further contends that even if the Court were to consider this evidence, remand would be inappropriate because the evidence is not material as the records do not support a disability finding during the relevant time period. *Id.*

The undersigned notes that this Court denied Plaintiff's separate motion to supplement his brief on the merits with many of the records that he attaches to his merits brief. ECF Dkt. #s 17, 19. On October 26, 2010, Plaintiff sought to supplement his brief on the merits with Dr. Koricke's

consultative examination dated October 15, 2009, Nord Center records, and a subsequent favorable ALJ decision dated April 29, 2010. ECF Dkt. #17. The Court denied Plaintiff's motion to supplement, finding that he failed to show that the evidence was material. ECF Dkt. #19. The Court found that the supplemental evidence was dated October 15, 2009 and July 13, 2009, well after the disability period ended on September 30, 2007. *Id*. The Court recognized the difficulties that practitioners face in attempting to obtain medical opinions in a timely manner, but denied a remand under sentence six of 42 U.S.C. § 405(g) and denied supplementation of the administrative record because the law compelled denial. *Id.*

Plaintiff seeks to submit the same evidence that this Court already denied him the opportunity to submit. Accordingly, based upon the reasons already advanced by the Court, the undersigned recommends that the Court deny remand of the instant case because the evidence offered is not material since it concerns records, conditions and diagnoses issued after the end of Plaintiff's relevant disability period. Plaintiff's disability period ended on September 30, 2007 and the subsequent favorable ALJ decision dated April 29, 2010, the records from the Nord Center, and the consultative examination by Dr. Koricke dated October 15, 2010 all post-date his date last insured. Some of the Nord Center records that Plaintiff attempts to submit are within the date last insured, but those records are already part of the administrative record and were considered by the ALJ. *Compare* ECF Dkt. #17-3 at 27-28, 32-34 *with* Tr. at 494-522; Tr. at 28.

Should the Court decide to reconsider its prior determination, the undersigned offers the following law and analysis. A remand under sentence six of 42 U.S.C. § 405(g) to consider additional evidence is warranted only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is considered "new" "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Id*., quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Evidence is considered "material" "only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Foster*, 279 F.3d at 357, quoting *Sizemore v. Sec'y of Health & Human Servs*., 865 F.2d 709, 711 (6th Cir. 1988). "Good cause" for failure to

-5-

present the evidence to the ALJ is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357, citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984)(per curiam). It is the claimant's burden to show that a remand is appropriate. *Foster*, 279 F.3d at 357, citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Even if Plaintiff in this case showed that the additional evidence is new and that good cause existed for his failure to present the evidence, the undersigned recommends that the Court find that Plaintiff has not shown that the evidence is material to the instant case. In asserting that the additional evidence is material, Plaintiff states that the new evidence resulted in a subsequent favorable decision by an ALJ that Plaintiff was disabled as of March 1, 2009 due to his severe depression. However, a subsequent favorable decision alone is not material evidence that mandates a remand under Sentence Six. *See Walton v. Astrue*, No. 3:09CV2869, 2011 WL 198009, at *11-12, (N.D. Ohio Jan. 18, 2011), quoting *Mazurkiewicz v. Comm'r of Soc. Sec.*, No. 3:09CV167, 2010 WL 1258094, at *6 (N.D. Ohio Mar. 30, 2010)("[a] subsequent favorable decision alone, however, 'as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence."[citations omitted]). Plaintiff also contends that the Nord Center records from 2008 through 2009 and Dr. Koricke's assessment are material because they show the true severity and duration of his mental condition. ECF Dkt. #13 at 12. However, Plaintiff fails to explain how these records relate back to his depression as it existed prior to his date last insured. "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 Fed.Appx. 841, 845 (6th Cir.2004). "Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence 'relates back' to the claimant's limitations prior to the date last insured." *Walton*, 2011 WL 198009, at *7, citing *Barnett v. Sec'y of Health & Human Servs.,* No. 86-3111, 1987 WL 36614, at *3 (6th Cir. 1987), unpublished. Plaintiff also fails to explain why these records after the date last insured merely show a worsening of his condition as opposed to relating back to the relevant time period. "[A] Sentence Six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing." *Walton*, 2011 WL at 10, citing *Wyatt v. Sec'y of Health*

-6-

*& Human Servs*., 974 F.2d 680, 685 (6th Cir. 1992).

For these reasons, the undersigned recommends that the Court reject Plaintiff's request for a remand based upon new and material evidence.

### B.   CREDIBILITY ASSESSMENT

Plaintiff also asserts that the ALJ erred in analyzing his complaints of pain and limitations resulting from his degenerative disc disease. ECF Dkt. #13 at 12. Plaintiff contends that the ALJ failed to engage in the required analysis of his disabling pain under *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir. 1986). *Id*. at 13-14. The undersigned recommends that the Court find merit to Plaintiff's assertion.

Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Commissioner of Social Sec*., No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011), slip op. citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390(6th Cir. 2004). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Social Sec.,* 127 F.3d 525, 530 (6th Cir. 1997). Moreover, the ALJ must include specific reasons "supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." Social Security Ruling 96-7p ("SSR 96-7p"). SSR 96-7p further requires that "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."

The social security regulations establish a two-step process for evaluating pain. 20 C.F.R. § 404.1529 , SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan*, 801 F.2d at 853. Therefore, the ALJ must first consider whether an underlying medically determinable

-7-

physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Second, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234.

In this case, the ALJ cited to the proper regulations, Social Security Rulings, and the two-prong test required to assess Plaintiff's credibility and statements of disabling pain. Tr. at 26. The ALJ addressed the first prong of the pain analysis, finding that Plaintiff's underlying back and neck impairments could reasonably be expected to produce pain or other symptoms. *See id.* As to the second prong, the ALJ found:

> the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id.* at 29. In making this determination, the ALJ reviewed the medical evidence showing relatively normal findings. *Id.* at 27. In fact, the ALJ cited almost exclusively to the objective medical evidence that supported his unfavorable finding. The Sixth Circuit has held that an ALJ commits error in selectively including only portions of reports that show a claimant in a "capable light" but excludes the portions of the reports that present Plaintiff in a "less than capable light" because it

-8-

suggests the ALJ has only considered part of the report in formulating his conclusion. *Burgoyne,* 2010 WL 955884, at *2, citing *Howard*, 276 F.3d at 240-241 *Hopkins*, 2009 WL 136022, at *14 and *Fanning v. Shalala*, 1994 WL 706653 at *7.

For instance, the ALJ cited to chronic low back pain secondary to lumbar spondylosis and the fact that Plaintiff was under the care of a physician at a pain clinic, Dr. Shah, from July 5, 2006 to March 11, 2008. Tr. at 27. The ALJ noted one lumbar facet injection on October 27, 2006. *Id*. However, the ALJ fails to mention the medical evidence tending to favor Plaintiff's complaints of pain. The record shows that Plaintiff received repeated lumbar radiofrequency facet injections with fluoroscopy in his lumbar spine throughout 2006, 2007 and 2008 for his consistent complaints of lumbar pain and diagnoses of lumbar sprain/strain, degeneration of lumbar or lumbosacral intervertebral disc and lumbar facet syndrome. The records show radiofrequency facet injections on August 4, 2006, August 18, 2006, October 20, 2006, February 9, 2007, April 13, 2007, August 27, 2007, September 25, 2007, January 4, 2008, February 1, 2008 and June 17, 2008. Tr. at 436-437, 444, 452-453, 457, 461-462, 538, 551. Moreover, Dr. Shah at times increased Plaintiff's Flexeril medication dosage, prescribed Vicodin and Neurontin, and prescribed aquatic therapy. *Id.* at 406, 551. Moreover, while the ALJ cites to normal muscle testing performed in 2008, the ALJ fails to mention clinical findings showing facet tenderness and restricted lumbar ranges of motion. *Id*. at 262, 411, 420, 426, 435, 442, 450, 461, 537, 542-543, 548, 556, 562, 567.

The ALJ also cited to a normal July 2003 MRI of the lumbar spine and a January 2003 x-ray showing degenerative disc disease of the lumbar spine at L1-2. Tr. at 27. However, the July 2003 MRI is the first MRI in the record which also showed the Schmorl's node in Plaintiff's lumbar area. *Id*. at 186i. The ALJ referenced and apparently relied upon ME McKenna's testimony defining a Schmorl's node as "where the disc matter (pulp) permeates into the end plate, compressing the end plate and causing an internal pressure fracture in the disc." *Id*. Accepting ME McKenna's testimony, the ALJ stated in his decision that this nodule was present prior to Plaintiff's onset date and he notes that ME McKenna found that Plaintiff could perform light work, with occasional bending, twisting, stooping and turning due to his chronic back pain and myofascial residuals. *Id*. However, neither the ALJ nor ME McKenna explain how they came to the conclusion that the

-9-

nodule was present prior to Plaintiff's onset date in this case.

Further, ME McKenna's testimony regarding critical information regarding the Schmorl's nodule is confusing. For example, ME McKenna was under the impression that the Plaintiff injured his back initially from lifting a forty or fifty pound crate at work. *Id*. at 584. Plaintiff informed ME McKenna that he initially hurt his back in 2001 when he fell eighteen-feet in an industrial accident. *Id*. Plaintiff related that he never fully recovered from the fall but doctors diagnosed him with only a back sprain. *Id.* at 585. The following colloquy then occurs between the ALJ and ME McKenna:

> ALJ: So, you're telling me doctor, in your opinion, the real suggestion of the medical evidence in the record rely on the opinion of the claimant's physical?
>
> A: I think we do, Your Honor.

Tr. at 585. The undersigned does not understand this testimony. The medical expert thereafter proceeds to indicate that Plaintiff's primary impairment is his back pain and Dr. McKenna describes the Schmorl's nodule. *Id.* He then states:

> A: So, he's had that Schmorl's nodule prior to the alleged onset date in this particular incident. So, it's actually been called a serial x-rays and MRI's of his back all show that that Schmorl's nodule has been in existence prior to this current alleged onset date. But is, nevertheless, a significant impairment but a chronic finding, Your Honor.

*Id*. at 586. When the ALJ asks whether Plaintiff's impairments meet or equal a Listing, Dr. McKenna responds that they do not. *Id*. at 587. The following questions and answers are then transcribed:

> Q: Are they be on pace for a physical RFC residual list?
>
> A: Despite the rather a minor mechanism of injury description third time round, I think I counted the combination factors, it would probably limit him to the light loads, 20 pounds occasionally and 10 pound frequently, Your Honor. And on account of the myofascial facet and the chronic pain situation with all the procedures, etc. he's had, I would limit him to occasional bending and stooping and twisting and turning, Your Honor. That would also apply to his neck on account of the fusion.

*Id*.

Based upon ME McKenna's confusing testimony, as well as the ALJ's almost exclusive use of medical evidence favoring his decision, the undersigned recommends remand of the instant case for more thorough analysis and support of the ALJ's credibility determination and pain analysis.

-10-

Even if the Court should conclude that the ALJ's findings regarding the medical evidence are acceptable and supported in discounting Plaintiff's complaints of disabling pain, the undersigned recommends that the Court remand the pain analysis because the ALJ referred to only one of the other relevant SSR 96-7p factors to support his credibility finding. The ALJ noted that Plaintiff received an injection, as mentioned above, and he had received physical therapy. Tr. at 27. However, the ALJ mentioned these modalities only in the context of reviewing the medical evidence favoring his determination. *Id.* The ALJ offered nothing more for his pain analysis except his reliance upon a statement Plaintiff made to a physician on June 25, 2005 from which the ALJ inferred that Plaintiff could perform activities such as fishing, lifting weights, wrestling, and mowing his lawn prior to his alleged onset date of December 25, 2003. Tr. at 29.

On June 25, 2005, Dr. Hazen, the physician who performed Plaintiff's right anterior C5-C6 microdiscectomy, osteophytectomy, allograft bone fusion and plate, noted Plaintiff's medical history and reported that Plaintiff presented for evaluation of his neck and right upper extremity pain syndrome that resulted from a motor vehicle accident on December 23, 2004. *Id.* at 366. Dr. Hazen referenced Plaintiff's neck and back pain resulting from the motor vehicle accident, but also noted that Plaintiff had a prior injury to his back three years ago that was aggravated by the motor vehicle accident. *Id.* Dr. Hazen cited to Plaintiff's complaints of neck pain and constant pain down his right shoulder to his arm and forearm, with tingling in his first three fingers on his right hand. *Id.* Dr. Hazen then wrote that "[h]e is losing his feeling. When the pain is real bad, he may not even be able to hold a coffee cup with his right arm because it starts to have tremors and then gets weak. It is severely limiting his life in that he cannot fish, he cannot lift weights, he cannot wrestle, he cannot mow his lawn." *Id.* From this statement, the ALJ surmised that Plaintiff could perform these activities between the time of his alleged onset date of December 25, 2003 and the motor vehicle accident of December 23, 2004, which negates a disability finding. *Id.*

The undersigned recommends that the Court find that even if such an inference could be made, it alone, and even coupled with the medical evidence that the ALJ selected which favored his determination, is insufficient to constitute an adequate pain analysis and determination of credibility. Accordingly, without additional explanation in his decision, the undersigned

-11-

recommends that the Court find that the ALJ has failed to follow agency regulations and rules. "The ALJ must. . . do more than say the testimony is not credible based on generalities or merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain." *McKinney v. Commissioner of Social Security*, No. 08-10624, 2009 WL 877668 at *9 (E.D.Mich. Mar. 30, 2009) citing *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir.1994). SSR 96-7p states that "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence....; the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [AJL] must consider in assessing an individual's credibility and must be considered in the context of all the evidence." *Id*.

For these reasons, the undersigned recommends that the Court remand this case for further explanation of his pain analysis and credibility determination.

### C.    **INCOMPLETE EXPERT TESTIMONY**

Plaintiff also contends that the ALJ improperly relied upon the opinions of ME Kravitz[1] and the VE when their opinions were based upon insufficient medical records. ECF Dkt. #13 at 14. Plaintiff asserts that ME Kravitz testified at the hearing that it was questionable whether Plaintiff would be able to sustain work or handle ordinary levels of stress due to his impairments. *Id*. at 17, citing Tr. at 604. Plaintiff asserts that ME. Kravitz also testified that it would have been helpful to have a medical source opinion as to Plaintiff's symptoms and the degree to which medications controlled those symptoms. ECF Dkt. #13 at 17, citing Tr. at 606. Plaintiff contends that the medical source was never contacted and without a medical source statement, ME Kravitz could not adequately testify as to Plaintiff's limitations. ECF Dkt. #13 at 15. Plaintiff states that his prior

---

[1]  Throughout nearly all of his argument on this issue in his brief, Plaintiff mistakenly refers to Dr. McKenna as the psychiatric medical expert. ECF Dkt. #13 at 17-18. Dr. Kravitz, a psychologist, is the medical expert who testified at the hearing as to Plaintiff's mental impairments. Tr. at 64, 587. The undersigned also notes that the transcriber of the hearing incorrectly referred to Dr. Kravitz as Dr. Kravilz throughout the transcript. *Id*. at 570-616.

counsel and the ALJ both attempted to obtain a statement from Dr. Lee, Plaintiff's treating psychiatrist prior to the hearing, but were unsuccessful. *Id.* Further, records from the Nord Center were not complete beyond 2006 and no attempts were made to obtain a medical source statement from the treating psychiatrist or psychologist there. *Id.* at 15. Plaintiff notes that the Nord Center had been treating him since 2005 and the Center's records constituted the primary reason for the subsequent ALJ's determination that he was disabled in his new application. *Id*. Plaintiff asserts that because ME Kravitz testified that it would have been helpful to have a medical source statement, and because he did not address limitations resulting from Plaintiff's bipolar disorder, ME Kravitz could not adequately testify as to Plaintiff's limitations. *Id*. at 17. Plaintiff concludes that the ALJ therefore presented an inadequate hypothetical person to the VE since it was based upon the incomplete testimony of ME Kravitz. *Id*.

The undersigned recommends that the Court find no merit to Plaintiff's assertion. As to attempting to obtain Dr. Lee's statement, Plaintiff's counsel indicated at the hearing that it was his fault that Dr. Lee's records and a statement were missing from the file as he did not learn about Plaintiff's treatment with Dr. Lee until the day of the hearing. Tr. at 600. Morever, despite the lack of records and a statement from Dr. Lee, ME Kravitz affirmed that sufficient and definite medical evidence existed in the record in order to form an opinion of Plaintiff's medical past and he opined a mental RFC for Plaintiff of employment with short, simple instructions, incidental contact with the public, brief and superficial contact with co-workers and supervisors, and jobs with low, predictable levels of stress with no frequent changes in the job routine. *Id*. at 603-604. Dr. Kravitz based his mental RFC upon the records in Plaintiff's file, which included Nord Center records for the time period relevant to Plaintiff's onset date to date last insured in this case.

Further, the ALJ did attempt to obtain a medical source statement from Dr. Lee after the hearing. The ALJ mailed out a medical source statement to Dr. Lee on September 30, 2008 and requested that Dr. Lee return the assessment form within ten days. Tr. at 532. A notation on the ALJ's letter to Dr. Lee indicates that Dr. Lee had not seen Plaintiff since February 2008 and he could not make an assessment. *Id.* Further, the record shows that Plaintiff's counsel obtained Dr. Lee's medical records and they were mailed to the ALJ on September 12, 2008. *Id*. at 524-531. All

of those records post-date Plaintiff's date last insured. Thus, the undersigned recommends that the Court find that the ALJ fulfilled his duty to fully and fairly develop the record and could properly rely upon ME Kravitz's opinion as to Plaintiff's limitations based upon the records in the file.

As to updated Nord Center records and a medical source statement from the Nord Center, the undersigned notes that Plaintiff's counsel provided records from that Center dated June 6, 2006 through June 6, 2008. Tr. at 494-522. Further, ME Kravitz clarified to Plaintiff's counsel at the hearing that the records and medical source statement that he felt would be helpful to him were from Dr. Lee, since he was the last treatment provider for Plaintiff's mental impairments during the relevant time period. *Id.* at 605-607. In addition, Plaintiff testified at the hearing that he had yet to return to the Nord Center for treatment after last seeing Dr. Lee in February 2008. *Id.* at 590. Thus, any updated records from the Nord Center would relate to the time period after Plaintiff's date last insured, which has already been deemed immaterial by Judge Pearson.

For these reasons, the undersigned recommends that the Court find that the ALJ provided Plaintiff with a full and fairly developed record and did not rely upon medical expert testimony that was incomplete.

## VI.     RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND the instant case for further evaluation and explanation of the pain and credibility determination.


DATE: August 5, 2011                                             */s/George J. Limbert*
                                                                 GEORGE J. LIMBERT
                                                                 UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).